**FIRST CAPITAL ASSET MANAGEMENT, INC.,**
**et ano., Plaintiffs,**

v.

**BRICKELBUSH, INC.,**
**et al., Defendants.**

**No. 00 Civ.5597 (LAK).**

United States District Court,
S.D. New York.

July 19, 2001.

Eric W. Berry, New York City, for Plaintiffs.

Russell P. McRory, Garden City, NY, for Defendants Satinwood, Inc., Sphinx Rock, N.V., Ahmed Vahabzadeh, Afsar Vahabzadeh, Savco, S.A., and the Estate of Soleyman Vahabzadeh.

Robert A. Johnson, Akin, Gump, Strauss, Hauer & Feld, LLP, New York City, for Defendants Manou Failly, Manco, Inc., Youssef Vahabzadeh and Brickelbush, Inc.

Sohrab Vahabzadeh, Defendant, pro se.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This is a civil action under the Racketeer Influenced and Corrupt Organizations Act ("RICO") based on alleged bankruptcy and mail fraud. Plaintiffs are judgment creditors who allege that RICO violations and state law fraudulent conveyances prevented them from satisfying outstanding judgments against defendant Sohrab Vahabzadeh and related companies. Defendants charged with RICO violations are members of the Vahabzadeh family and the family's Swiss attorney, Jens Schlegelmilch ("Schlegelmilch"). The matter is before the Court on defendants' motions to dismiss for failure to state a claim, lack of personal jurisdiction, lack of standing, and failure to plead fraud with particularity and on plaintiffs' conditional cross-motion for leave to amend the complaint and their cross-motion to strike.[1]

### Facts

*Sohrab Vahabzadeh Enters into a Stock Purchase Agreement with Plaintiffs*

At the root of this dispute is a stock purchase agreement entered into by plaintiff First Capital Asset Management ("FCAM") and defendant Sohrab Vahabzadeh ("Sohrab") and his companies, NACI and NAP, in October 1993. Sohrab was to pay FCAM $4.5 million in return for an interest in a new Delaware corporation called First Capital Corp. The agreement provided that Oost–Lievense, the other plaintiff in this case, would become First Capital Corp.'s chief executive officer. Based on this agreement, Oost–Lievense resigned as president of ABN AMRO Securities, Inc.

Later in October, Sohrab, NACI and NAP breached the agreement, leaving FCAM without its $4.5 million and Oost–Lievense without a job. For reasons not crucial here, plaintiffs allege that Sohrab, NACI and NAP owed FCAM and Oost–Lievense fiduciary duties and that the failure to disclose material adverse events concerning the financing of the deal breached these duties.

*FCAM and Oost–Lievense Sue*

FCAM and Oost–Lievense did not stand idly by. In December 1993, FCAM sued Sohrab, NACI and NAP in Texas for breach of contract. The action was dismissed on the ground of *forum non conveniens* but recommenced in New York,

---

1. Although this is a Rule 12(b) motion, both sides have submitted materials in addition to the pleadings. The Court in appropriate circumstances may consider such materials and thereby convert the motion to one for summary judgment. But these are not such circumstances. *Sawyer v. Am. Fed'n of Gov't Employees,* 180 F.3d 31, 34 (2d Cir.1999); *Sultan v. New York City Dep't of Bldgs.,* 99 Civ. 8615(LAK), 2000 WL 262923, at *1 (S.D.N.Y. Mar. 7, 2000). Moreover, neither party has complied with Local Rule 56.1. Accordingly, the Court excludes the materials outside the complaint for the purposes of deciding this motion, taking the plaintiff's well-pleaded factual allegations as true and drawing all reasonable inferences in the plaintiffs' favor.

where the State Supreme Court granted summary judgment for FCAM against NACI and NAP on February 27, 1997, awarding damages of $4.5 million plus interest.[2] The state court held, however, that Sohrab was not himself liable.

Upon realizing that the companies had no locatable assets available to satisfy this judgment, FCAM filed a second lawsuit in New York County in which it sought to hold Sohrab responsible for the judgment against NACI as its *alter ego.*[3] The state court initially dismissed the petition against Sohrab, but the Appellate Division reversed.[4] On June 27, 2001, the New York Supreme Court entered judgment in favor of FCAM against Sohrab for more than $5 million.[5]

Meanwhile, Oost–Lievense sued Sohrab, NACI and NAP in this Court for breach of an employment agreement.[6] Eventually, without a trial, all defendants stipulated to amounts of damages and judgment was entered in Oost–Lievense's favor.

*The Sohrab Bankruptcy*

On July 17, 1997, a few weeks before the Oost–Lievense trial was scheduled to begin, Sohrab filed a bankruptcy petition. This was followed closely by FCAM and Oost–Lievense filing an adversary pro-

ceeding in which they objected to Sohrab's discharge under Section 727 of the Bankruptcy Code[7] on the basis of bankruptcy fraud and fraudulent conveyance. Eventually, Sohrab's Chapter 7 petition for discharge was denied on grounds of bankruptcy fraud.[8]

According to plaintiff, the RICO predicate acts revolved around Sohrab's bankruptcy proceeding. Specifically, plaintiffs identify the following RICO predicate acts, primarily bankruptcy frauds and mail frauds:[9]

■ In August 1995, Sohrab and Peninsula, allegedly Sohrab's *alter ego*, fraudulently conveyed their interests in a partnership to Brickelbush in contemplation of bankruptcy.

■ In early 1997 Sohrab transferred property inherited from Soleyman to other family members, including Afsar. Schlegelmilch prepared the documents that effected the transfer.

■ On July 17, 1997, Sohrab filed a materially false bankruptcy petition.

■ On September 16, 1997, Sohrab made false statements under oath at the Bankruptcy Rule 2004 examination by his creditors.

2. *See First Capital v. North Am. Consortium,* No. 133996/94 (N.Y. Sup.Ct., N.Y. Co. Feb. 27, 1997).

3. *See First Capital Asset Mgmt., Inc. v. N.A. Partners, North Am. Capital Guar., Inc., the Estate of Soleyman Vahabzadeh & Sohrab Vahabzadeh,* No. 97/602189 (N.Y.Sup.Ct., N.Y.Co. Oct. 22, 1998).

4. *See First Capital Asset Mgmt., Inc. v. N.A. Partners, L.P.,* 260 A.D.2d 179, 688 N.Y.S.2d 25 (1st Dep't) (vacating the New York Supreme Court's judgment insofar as it dismissed the petition against Sohrab and otherwise affirming), *leave to appeal denied,* 93 N.Y.2d 817, 697 N.Y.S.2d 564, 719 N.E.2d 925 (1999).

5. *See First Capital Asset Mgmt., Inc. v. N.A. Partners, L.P.,* No. 97/602189 (N.Y. Sup.Ct., N.Y. Co. June 27, 2001).

6. *See Oost–Lievense v. North Am. Consortium, Inc.,* 969 F.Supp. 874 (S.D.N.Y.1997) (HB).

7. 11 U.S.C. § 727.

8. *See In re Vahabzadeh, Sohrab,* No. 97–44779(JHG) (Bankr.S.D.N.Y. Dec. 10, 1999) (chapter 7 case); *First Capital Asset Mgmt., Inc. v. Vahabzadeh,* No. 97–9107A (Bankr. S.D.N.Y. Dec. 10, 1999) (adversary proceeding).

9. Cpt. ¶ 152.

■ Ahmed and Schlegelmilch directed the estate's attorney to submit declarations to the Bankruptcy Court in February and March 1998 containing false statements about the contents of Soleyman's estate and, in June 1998, Afsar and Soleyman's estate directed the same attorney to submit a similar declaration.

■ In March 1998, Afsar and Schlegelmilch submitted affidavits to the Bankruptcy Court making false claims about Soleyman's citizenship.

■ On June 25, 1998, Sohrab submitted an affidavit to the Bankruptcy Court in which he falsely stated that he searched for a complete copy of a trust agreement.

■ In September 1998, Ahmed, AFIWA (at the direction of Ahmed), Afsar, and Schlegelmilch committed mail fraud by sending Sohrab letters claiming they had no documents relevant to Soleyman's estate.

■ Sohrab gave false testimony about his inheritance at his bankruptcy trial in October 1999.

■ From September 1997 to December 1999, Afsar sent Sohrab approximately $5000 per month, purportedly from Sohrab's bank accounts overseas. Ahmed made such payment through his account on October 3, 1998, and Schlegelmilch made such payment on August 4, 1998, and November 3, 1998. Similarly Schlegelmilch and Ahmed paid legal fees in September 1999, purportedly drawing on money deposited by Sohrab in their accounts.

### The Present Action

Plaintiffs filed the present complaint in July 2000. It contains ten causes of action, two under RICO and the others under state law. The RICO counts—one substantive and one for conspiracy—are brought against defendants Sohrab, Ahmed, and Afsar Vahabzadeh, and Schlegelmilch. Sohrab was the debtor in the bankruptcy proceeding, Ahmed is his uncle, Afsar is his mother, and Schlegelmilch is the Swiss family lawyer. The civil RICO claims are the only bases for federal jurisdiction.

The matter is before the Court on the defendants' motions to dismiss. Satinwood, Inc., Sphinx Rock, N.V., Ahmed Vahabzadeh, Savco, S.A., and the Estate of Soleyman Vahabzadeh ("Vahabzadeh defendants") moved to dismiss under FED. R. CIV. P. 12(b)(6) for failure to state a claim, under FED.R.CIV.P. 9(b) on the ground that the predicate acts are not pleaded with sufficient particularity, and under FED. R.CIV.P. 12(b)(1) for lack of standing and subject matter jurisdiction. They moved also to dismiss all claims against Afsar, Ahmed, and AFIWA under FED. R. CIV. P. 12(b)(2) for lack of personal jurisdiction. Defendants Brickelbush, Manou Failly, and Youssef Vahabzadeh ("Failly defendants") moved to dismiss for lack of jurisdiction, failure to plead fraud with specificity, and failure to state a claim.

Plaintiffs have made two cross-motions, seeking to strike several unsworn statements and, if the RICO counts are dismissed for failure sufficiently to allege an enterprise or the *alter ego* allegations are dismissed, to amend the complaint to cure any such defects. Part of the first motion and the entirety of the second are applicable only in the event that the Court converts defendants' motions to summary judgment motions.[10] Because there is no conversion, they need not be addressed.

### Discussion

#### A. Personal Jurisdiction

■ Defendants have challenged the Court's personal jurisdiction over Ahmed,

---

10. Plaintiffs' notice of cross-motion (Mar. 10, 2001).

Afsar, and Schlegelmilch. Ordinarily, the Court would address jurisdictional issues before a motion to dismiss for failure to state a claim.[11] Here, however, personal jurisdiction is based in part on the defendants' role as RICO co-conspirators with Sohrab, a defendant over whom this Court's personal jurisdiction is undisputed. State and federal courts in New York have found that personal jurisdiction may be based on acts of a co-conspirator.[12] To evaluate personal jurisdiction, then, would require examining the RICO counts. If the RICO conspiracy counts are sufficient, the plaintiff has made out a *prima facie* showing of personal jurisdiction, enough to survive a motion to dismiss decided on pleadings and affidavits alone.[13] Accordingly, initial consideration of the adequacy of the RICO claims is appropriate.

### B. The RICO Claims

■ To state a RICO claim, a plaintiff must ultimately show "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962."[14] Section 1962(c) provides in relevant part that it is unlawful "for any person employed by or associated with any enterprise ... to conduct or participate in the conduct of such enterprise's affairs through a pattern of racketeering activity." Section 1962(d) makes it unlawful to conspire to violate any of Sections 1962(a)-(c).

Defendants challenge the RICO claims on the grounds that the complaint does not state fraud claims with the particularity required by FED. R. CIV. P. 9(b), that plaintiffs fail adequately to allege an enterprise, a pattern of racketeering activity, or a conspiracy, and that plaintiffs lack standing.

### 1. Rule 9(b)

■ As the predicate acts upon which plaintiffs rely are alleged frauds, the allegations of those acts must comply with Rule 9(b)'s requirement that "the circumstances constituting fraud" be pled with particularity. Given the Court's discussion of the pattern requirement below, for the purposes of these motions it is enough to examine the sufficiency of the chronologic outliers, specifically the August 1995 conveyances and the transfers of funds to Sohrab in 1998 and 1999.

#### (a) August 1995 Fraudulent Conveyance

■ The complaint alleges that in August 1995, in contemplation of bankruptcy, Sohrab and a company that is his *alter ego* transferred their interests in a partnership for inadequate consideration and no consideration, respectively.[15] The Vahabzadeh defendants urge the Court to find that the pleading of this predicate act does not comply with Rule 9(b), in part because the only element that makes the August 1995 conveyance a RICO predicate act is the unsupported assertion that Sohrab was

---

**11.** *E.g., Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir.1963) (Friendly, J.).

**12.** *E.g., Laborers Local 17 Health & Benefit Fund v. Philip Morris,* 26 F.Supp.2d 593, 601 (S.D.N.Y.1998) (citing cases); *Travelers Indem. Co. v. Inoue,* 111 A.D.2d 686, 490 N.Y.S.2d 506, 507 (1st Dep't 1985).

**13.** *E.g., Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.), *cert. denied,*

498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990).

**14.** *De Falco v. Bernas,* 244 F.3d 286, 305 (2d Cir.2001) (quoting *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.,* 101 F.3d 900, 904 (2d Cir.1996)) (internal quotation marks omitted).

**15.** Cpt. ¶¶ 82–108, 152(a).

contemplating filing for bankruptcy at the time, thus rendering the transfer fraudulent.[16] Essentially, the argument is that Sohrab's contemplation of bankruptcy is a "circumstance[] constituting fraud" that should be treated in the same way as fraudulent intent—plaintiffs should be required to allege facts that "give rise to a strong inference of fraudulent intent."[17] Although defendants cite no case in support of this precise point, allegations of fraud must detail the respect in which a statement or act was fraudulent,[18] and the claim that the conveyance was made in contemplation of bankruptcy explains in what way the conveyance allegedly was fraudulent.

■ A strong inference of fraudulent intent is made out "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."[19] Not only is there a dearth of facts supporting such an inference, but several allegations undermine it. The transfer predated the bankruptcy filing by two years and occurred before judgments were entered against Sohrab and his companies. Plaintiffs allege elsewhere that the pattern lasted from January 1997 through November 13, 1999,[20] a time period that omits the initial allegedly fraudulent conveyance. Moreover, the other allegations that Sohrab made fraudulent conveyances in the same period—for example the third claim that in August 1995 Sohrab transferred $360,000 to Soleyman and the fourth claim that Sohrab transferred his interest in an unrelated judgment in 1995 or 1996—do not allege that he made these in contemplation of bankruptcy, despite being contemporaneous. In consequence, the complaint offers no rational basis upon which to ground an inference that the August 1995 transfer was made in contemplation of bankruptcy. It contains only conclusory allegations of *scienter* without the necessary minimum factual basis.

### (b) Transfer of Funds

■ The complaint further alleges that Ahmed, Afsar and Schlegelmilch at various times in 1998 and 1999 violated 18 U.S.C. § 152(7) by receiving assets from Sohrab, a debtor intending to defeat the purpose of the Bankruptcy Code. For the pleading of this bankruptcy fraud to comply with Rule 9(b), plaintiffs at the very least must be specific about when it allegedly occurred.[21] Although the complaint details when the money was transferred to Sohrab from the family members and Schlegelmilch, it is

16. *See* Memorandum of law in support of Vahabzadeh defendants' motion to dismiss, at 11–12; Cpt. ¶¶ 87, 100 ("These transfers violated § 152(7) of the Bankruptcy Code because they were made at a time when Sohrab was contemplating filing for bankruptcy and were implemented with the intention of defeating the purpose of the bankruptcy code."); *id.* ¶ 152(a) (same).

17. *Acito v. IMCERA Group*, 47 F.3d 47, 52 (2d Cir.1995).

18. *E.g., Moore v. PaineWebber, Inc.,* 189 F.3d 165, 173 (2d Cir.1999).

19. *Hallwood Realty Partners v. Gotham Partners, L.P.,* 95 F.Supp.2d 169, 174 (S.D.N.Y. 2000) (quoting *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994)).

20. *See* Cpt. ¶ 26.

21. *Moore,* 189 F.3d at 172–73 ("[The complaint must] specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.") (quoting *McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992)) (quoting in turn *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989)).

silent on when the money was received from the debtor—the essence of the predicate act. Moreover, plaintiffs must allege "'circumstances that provide at least a minimal factual basis for their conclusory allegations of *scienter*.'"[22] As the Vahabzadeh defendants point out, plaintiffs allege elsewhere in the complaint that Soleyman's other children routinely received gifts amounting to hundreds of thousands of dollars a year,[23] circumstances that undermine an inference of fraudulent intent. Plaintiffs offer no facts that cut the other way. Accordingly, these predicate acts are pled with insufficient particularity and cannot be considered in evaluating the pattern of racketeering activity.[24]

### 2. Pattern of Racketeering Activity

Once the alleged predicate acts at the temporal extremes are eliminated, the Court turns to defendants' chief focus, their contention that the complaint does not allege a pattern of racketeering activity. The RICO statute provides that a "pattern of racketeering activity" must consist of "at least two acts of racketeering activity" undertaken within ten years.[25] The Supreme Court has elaborated on this requirement, holding that the acts must be "related" and "amount to or pose a threat of continued criminal activity" and that the required continuity may be either "open-ended" or "closed-ended."[26] Plaintiffs apparently allege open- and closed-ended continuity in the alternative, stating at various points in the complaint that the series of acts spanned a finite time of either three or four years and indicating elsewhere that defendants' "conduct is currently ongoing and recurring" and that defendants continue to hide Sohrab's assets from his creditors.[27]

### (a) Open-ended Continuity

To establish open-ended continuity, plaintiffs ultimately must show a threat of continuing criminal activity.[28] To determine whether conduct poses such a threat, courts have looked in part to the nature of an enterprise's business, holding that the acts of an enterprise that exists for criminal purposes almost certainly threaten repetition.[29] When, as is the case here, the enterprise[30] "primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity."[31] The circumstances may indicate

---

**22.** *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir.1994) (citing *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir.1987)).

**23.** *See* Cpt. ¶ 148(e).

**24.** *See GICC Capital Corp. v. Technology Fin. Group, Inc.*, 67 F.3d 463, 467 (2d Cir.1995), *cert. denied*, 518 U.S. 1017, 116 S.Ct. 2547, 135 L.Ed.2d 1067 (1996).

**25.** 18 U.S.C. § 1961(5).

**26.** *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 241, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

**27.** *See* Cpt. ¶¶ 26, 151.

**28.** *See De Falco v. Bernas*, 244 F.3d 286, 323 (2d Cir.2001) (quoting *Cofacredit S.A. v. Windsor Plumbing Supply*, 187 F.3d 229, 242 (2d Cir.1999)).

**29.** *H.J. Inc.*, 492 U.S. at 242–43, 109 S.Ct. 2893; *United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir.1995).

**30.** Plaintiffs allege that the RICO enterprise consists of Soleyman Vahabzadeh (succeeded by his estate), AFIWA, Savco, Cimbalo (succeeded by Sotar) and Zanda Management, Inc. *See* Cpt. ¶ 148.

**31.** *See De Falco*, 244 F.3d at 323 (quoting *Cofacredit*, 187 F.3d at 243).

a threat of future activity, as when there is evidence that a defendant attempted to make further fraudulent sales.[32]

This determination is inherently fact bound. And it is significant that the alleged acts here all revolve around a bankruptcy. First, while the complaint suggests that the enterprise has engaged in other questionable practices, it does not indicate that the enterprise or its participants have committed bankruptcy fraud or mail fraud as a way of doing business. Indeed, to say that the enterprise routinely engages in fraudulent conveyances would not be sufficient, as the predicate act—here bankruptcy fraud—must be the routine activity.[33] Moreover, the scheme here is "inherently terminable"[34] in that it necessarily ended with the bankruptcy to which it related. In these circumstances, plaintiffs' allegations are not sufficient to suggest a threat of continuity.

### (b) Closed-ended Continuity

■■■ Closed-ended continuity is established by "a series of related predicates extending over a substantial period of time."[35] Although not endorsing a "bright line test for determining precisely what period of time is 'substantial,'"[36] courts have pointed repeatedly to duration as the most important factor in whether a closed-ended RICO pattern exists.

Since the Supreme Court decided *H.J. Inc. v. Northwestern Bell Telephone Co.*,[37] this circuit has not held that a period of less than two years amounted to a period of time sufficiently substantial to make out a closed-ended pattern.[38] In *Jacobson v. Cooper*,[39] the court found closed-ended continuity where the predicate acts occurred over "a matter of years." In *Metromedia Co. v. Fugazy*,[40] it found erroneous a jury instruction stating that a few weeks or months was an example of a period long enough to establish a pattern, although it concluded that the error was harmless because the acts alleged spanned approximately two years. At least one "pattern" that extended over almost two years was sufficient to survive summary judgment, but only in the context of seventy predicate acts, some of which threatened continued criminal activity.[41]

■■■ While this circuit has not found acts spanning less than two years to be a closed-ended pattern, acts that occurred over longer periods do not automatically form a pattern. "[O]ther factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining

---

32. See *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir.1994).

33. *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. 2893; *Fleet Credit Corp. v. Sion*, 893 F.2d 441, 448 (1st Cir.1990) ("A threat of continued criminal activity for purposes of RICO is not established merely by demonstrating that the [defendants'] acts of common law fraud were a regular way of conducting their ongoing businesses. Rather, [plaintiff] must demonstrate that the *predicate acts* ... were a regular way of conducting the ongoing businesses.").

34. *Cofacredit*, 187 F.3d at 242.

35. *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. 2893.

36. *Metromedia Co. v. Fugazy*, 983 F.2d 350, 369 (2d Cir.1992), *cert. denied*, 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993).

37. 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

38. *De Falco*, 244 F.3d at 321.

39. 882 F.2d 717, 720 (2d Cir.1989).

40. 983 F.2d 350 (2d Cir.1992).

41. *Cosmos Forms Ltd. v. Guardian Life Ins. Co. of Am.*, 113 F.3d 308, 310 (2d Cir.1997).

whether closed-ended continuity exists." [42] Multiple schemes are not required,[43] but their existence may lend support to a finding that defendants' activities were "neither isolated nor sporadic." [44] Moreover, as the requirements of Section 1962(c) must be established as to each defendant,[45] it is necessary to consider for each defendant whether, taking into account its duration and other relevant factors, the series of well-pleaded predicate acts amounts to a pattern.

### (i) Patterns of less than two years

 The analysis is most straightforward for Ahmed, Afsar and Schlegelmilch because, taking all predicate acts but those found insufficient above, plaintiffs have alleged that each performed predicate acts over less than two years. Ahmed's first predicate act occurred on February 3, 1998, when allegedly he directed the attorney for Soleyman's estate to submit a false affidavit to the Bankruptcy Court. His last act allegedly was to send Sohrab a letter in September 1998 stating that he had no documents related to Soleyman's estate.[46] This time span—less than a year—simply is not enough to amount to a pattern of closed-ended continuity.[47] This conclusion is bolstered by the lack of variety in his predicate acts and the low number of acts alleged.

Afsar's alleged acts extended slightly longer, from the acceptance of the transferred inheritance in early 1997 to September 16, 1998, when she sent Sohrab a letter stating that she had no documents related to Soleyman's estate. Similarly, Schlegelmilch's first predicate act allegedly occurred in early 1997 and his last occurred on September 17, 1998. But even giving the most generous interpretation to "early 1997," [48] their activities extended over less than two years.

Not only were these series of acts limited in duration, but Schlegelmilch's and Afsar's activities all revolved around a single scheme to avoid Sohrab's bankruptcy creditors. Moreover, their predicate acts were limited in variety and number. Schlegelmilch's essentially amounted to drafting and submitting documents and affidavits in the various legal actions. Afsar made false statements and accepted the inheritance. Neither, all things considered, rises to the level of a pattern of racketeering activity.

### (ii) Sohrab

 Sohrab poses a slightly different problem because his alleged acts lasted from the transfer of his inheritance in early 1997 to October 1999, when he made false statements at his bankruptcy trial.

---

**42.** *Cofacredit*, 187 F.3d at 242; *GICC Corp. v. Technology Fin. Group Inc.*, 67 F.3d 463, 467 (2d Cir.1995) (citing cases).

**43.** *E.g., Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 16 (2d Cir. 1989), *cert. denied*, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990).

**44.** *GICC*, 67 F.3d at 467 (quoting *United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir.), *cert. denied*, 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989)).

**45.** *E.g., De Falco*, 244 F.3d at 322 n. 22.

**46.** The predicate acts listed in Count Seven, the RICO conspiracy claim, span the even shorter period from September 14, 1998 to October 3, 1998, clearly not enough to establish closed-ended continuity. Cpt. ¶ 166.

**47.** *See Cofacredit*, 187 F.3d at 244 ("[L]ess than one year [is] a period of insufficient length to demonstrate closed-ended continuity under our precedents.").

**48.** Plaintiffs fail to give an exact date of this transfer, calling it "Spring 1997," placing it in a chronology apparently after February 27, 1997, and calling it "early 1997."

That is, they extended over approximately three years. Nevertheless, that fact is not alone sufficient.

In *Schlaifer Nance & Co. v. Estate of Andy Warhol,* the Second Circuit affirmed the district court's holding that acts lacked sufficient continuity to make out a pattern despite the fact that they spanned more than three years. The court directed district courts to "take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." [49] Although the difference between a fragmented singular act and a series of sufficiently related acts is not self-evident, *Schlaifer Nance* stands at least for the proposition that the fact that acts last over a period of three years is not in itself enough to establish a pattern.

Here, Sohrab allegedly took part in a single scheme through acts limited essentially to false statements to the Bankruptcy Court and transfer of his inheritance. In the circumstances, taking the allegations of the complaint as true, plaintiffs have not alleged facts sufficient to establish a pattern.

### 3. Conspiracy

■ Section 1962(d) makes it unlawful to "conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Count 7 of the complaint alleges a conspiracy to violate RICO. Because plaintiffs' substantive RICO claims are infirm, there is no basis for a claim of conspiracy. [50] Moreover, there is no claim that the RICO defendants agreed to commit more predicate acts—enough to establish a pattern—than those alleged in the substantive count. [51] Accordingly, there was no agreement to engage in a pattern of racketeering activity. [52]

### C. Supplemental Jurisdiction

The alleged basis of subject matter jurisdiction over the fraudulent conveyance and veil piercing claims and over the defendants not named in the RICO counts is supplemental jurisdiction. As the RICO claims have been dismissed, the Court is not obliged to exercise supplemental jurisdiction, and it declines to do so. [53]

### D. Amendment

■ Plaintiffs have made a cross-motion to amend their complaint to allege an enterprise consisting of Soleyman (succeeded by his estate), AFIWA, Sohrab, Afsar, Ahmed and Schlegelmilch. Because the complaint is not dismissed on the ground that it does not adequately allege an enterprise, this particular amendment would be futile.

### Conclusion

The facts alleged are insufficient as a matter of law to support the claim that the defendants' activities amounted to a pattern of racketeering activity and the Court declines supplemental jurisdiction over the

**49.** 119 F.3d 91, 97–98 (2d Cir.1997).

**50.** *E.g., Edwards v. First Nat'l Bank,* 872 F.2d 347, 352 (10th Cir.1989); *R.C.M. Executive Gallery Corp. v. Rols Capital Co.,* No. 93–8571(JGK), 1997 WL 27059, at *10 (S.D.N.Y. Jan. 18, 1997).

**51.** *See* Cpt. ¶¶ 157–170.

**52.** *Cofacredit,* 187 F.3d at 245.

**53.** *See, e.g., Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (supplemental jurisdiction ordinarily declined where federal claim dismissed before trial); *DiLaura v. Power Auth.,* 982 F.2d 73, 80 (2d Cir.1992) (same); *Pavlov v. Bank of New York Co.,* 135 F.Supp.2d 426, 431 (S.D.N.Y.2001).

state law claims. The motion to dismiss the complaint is granted.

SO ORDERED.