Paul MARAGLIA, Plaintiff,

v.

Michael MALONEY, etc., Luis Spencer, etc., Edward Ficco, etc., Janice Pina, etc., Sgt. Peckham, etc., C.O. Slyman, etc., C.O. Andrea, etc., C.O. Hennessy, etc., Lt. Hammond, etc., Defendants.

No. CIV.A. 01–12144–RBC.[1]

United States District Court,
D. Massachusetts.

March 28, 2005.

---

**1.** This case has been referred and reassigned to the undersigned for all purposes including trial and the entry of judgment pursuant to 28 U.S.C. § 636(c).

Stephen G. Dietrick, MA Department of Correction, Legal Division, Boston, MA, for CO Hennesy, CO Slyman, Co. Andrea, Lt. Hammond, Sgt. Peckham, Edward Ficco, Sgt. Janice Pina, Luis Spencer, Michael Maloney, Defendants.

## MEMORANDUM AND SECOND ORDER ON MOTION TO DISMISS (# 33)

COLLINGS, United States Magistrate Judge.

### I. Introduction

The plaintiff filed his initial complaint (# 6) on December 5, 2001, first amended it on October 10, 2003(# 20) and then again on December 3, 2003(# 24) to alter the claims of the suit. As the amended complaint now stands, plaintiff Paul Maraglia ("Maraglia") alleges eight claims against nine individual defendants, namely Michael Maloney ("Maloney"), Luis Spencer ("Spencer"), Edward Ficco ("Ficco"), Janice Pina ("Pina"), Sgt. Peckham ("Peckham"), CO Slyman ("Slyman"), CO Andrea ("Andrea"), CO Hennessy ("Hennessy"), and Lt. Hammond ("Hammond").

All of the defendants have filed a motion to dismiss (# 33) the amended complaint for various reasons. The plaintiff has countered with letters (## 36, 37, 38) in opposition to the dispositive motion. On March 24, 2005, the Court allowed the motion as to defendants Maloney, Spencer, Ficco and Pina. At this juncture, the motion to dismiss is poised for resolution as to the defendants Peckham, Slyman, Andrea, Hennessey and Hammond.[2]

### II. The Applicable Standards

Among other reasons, the defendants seek to dismiss the plaintiff's claims pursu-

---

**2.** These five defendants have been served. *See ## 8–12.*

ant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim consequent to Maraglia's failure to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") and under Massachusetts General Laws Chapter 127 § 38F. As the Supreme Court declared in *Conley v. Gibson*, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the non-moving party can prove no set of facts in support of his claims that would entitle him to relief." *Conley*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). Furthermore, "in reviewing the legal sufficiency of petitioner's cause of action, '[the Court] must assume the truth of the material facts as alleged in the complaint.'" *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 631, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (citation omitted).

A leading treatise states that when ruling on a motion to dismiss in light of the PLRA guidelines, a "district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties." 5B Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1357, 409; *Chute v. Walker*, 281 F.3d 314, 315 (1 Cir., 2002); *First Capital Asset Management, Inc. v. Brickellbush, Inc.*, 219 F.Supp.2d 576, 580 (S.D.N.Y., 2002). Discussing the PLRA requirements, the Sixth Circuit has held that "the complaint of a plaintiff that fails to allege exhaustion of administrative remedies through particularized averments does not state a claim on which relief may be granted, and must be dismissed sua sponte." *Baxter v. Rose*, 305 F.3d 486, 489 (6 Cir., 2002).

"The court has considerable leeway under the liberal pleading standards of the federal rules in deciding when a complaint is formally insufficient." Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1357, 416. "In this process, the fact that the plaintiff filed the complaint pro se militates in favor of a liberal reading. *See Boivin v. Black*, 225 F.3d 36, 43 (1st Cir. 2000) (explaining that "courts hold pro se pleadings to less demanding standards than those drafted by lawyers")." *Rodi v. Southern New England School Of Law*, 389 F.3d 5, 2004 WL 2537204, *4 (1st Cir.2004)

### III. The Facts

The facts as recited have been culled from the amended complaint in a light most favorable to the plaintiff. Beginning with an introduction of the parties, Maraglia is an inmate in custody of the Massachusetts Department of Corrections who is presently incarcerated at Massachusetts Correctional Institute ("MCI") in Bridgewater, Massachusetts and was incarcerated at Souza–Baranowski Correctional Center ("SBCC") in Shirley, Massachusetts at the time of the alleged incidents. (# 24 ¶ 1) The five remaining individual defendants are all citizens of Massachusetts and are past and present employees of the Department of Corrections. (# 24 ¶¶ 2–10) Defendant Peckham is a security guard at MCI Bridgewater. (# 24 ¶¶ 5–6) Defendants Slyman, Andrea, Hennessy, and Hammond are all prison security guards at SBCC. (# 24 ¶¶ 7–10)

In 2000 and 2001, the plaintiff alleges frequent abuse, both physical and emotional, at the hands of various defendants named in the amended complaint. Specifically, Maraglia asserts that Peckham caused him both emotional and physical harm, including making threats on his life and kicking him in his lame right leg.[3] (# 24 ¶ 15) Maraglia specifically claims

---

3. Maraglia is disabled with a lame right arm, shoulder, and leg.

that in May of 2000, Peckham threatened him as he was leaving the chow hall and ordered him not to say anything about the incident to prison staff. (# 24 ¶ 5) From April to September of 2000, the plaintiff claims to have brought these acts to the attention of Spencer, but Spencer refused to act or intercede on Maraglia's behalf. (# 24 ¶ 12) The plaintiff alleges that Slyman caused him continuous harm as well, closing the cell door on his lame right leg and threatening him with further harm. (# 24 ¶ 16)

According to the amended complaint, from March to August of 2001, Andrea also closed the cell door on Maraglia's leg. (# 24 ¶ 17) It is further contended that Andrea ridiculed the plaintiff in front of other inmates and staff, making "groan sounds" when he walked by. (# 24 ¶ 17) Maraglia also claims that Andrea threatened him with harm and death, particularly if he filed additional grievances implicating Andrea. (# 24 ¶ 17)

It is alleged that on June 25, 2001, Hennessy grabbed the plaintiff by the neck and punched him in the face, resulting in a split lip that called for stitches. (# 24 ¶ 18) According to Maraglia, Hennessy also twisted his arm, handcuffed him in an abusive manner, and moved him out of range of the video camera surveillance to assault him further. (# 24 ¶ 18) The plaintiff alleges that Hennessy told him that he should not have written any grievances on his "friends, guards in that unit J2," used excessive force to move him to a "lockup" cell, and ordered the nurse on duty to withhold his medication from him. (# 24 ¶ 18)

From March to August of 2001, the plaintiff claims that Hammond attempted to persuade other inmates to abuse him

and made offensive comments about both Maraglia and his family. (# 24 ¶ 19) On August 8, 2001, Hammond purportedly threw the plaintiff against the wall, grabbing his lame right arm and twisting it deliberately to cause him pain. (# 24 ¶ 19) According to Maraglia, Hammond also deprived him of his visit with family members. (# 24 ¶ 19) During this same period, Maraglia claims to have brought the abuse to the attention of Ficco but that again no action was taken. (# 24 ¶ 19)

The plaintiff has not attached any grievances to his amended complaint.[4] As stated in the facts above, he alludes to interactions with the defendants about which grievances may have been filed, but specific details and documents are absent.

## IV. The Claims

Maraglia's primary claim is brought under 42 U.S.C. § 1983 alleging excessive force by prison guards in violation of the Eighth Amendment. The plaintiff also claims violations of Article XXVI of the Declaration of Rights of the Massachusetts Constitution and of Massachusetts General Laws chapter 12 § 11I as well as state claims of assault and battery and intentional infliction of emotional distress. One hundred thousand dollars in damages is sought as a result of the allegedly clear violations of his civil and constitutional rights.

## V. Discussion

In deciding the motion to dismiss a plaintiff inmate's complaint, a court must consider whether the administrative remedies available to the plaintiff have been exhausted under the PLRA before the plaintiff brought his or her claim in federal court. *Civil Rights of Institutionalized*

---

4. The defendants have filed affidavits with grievances attached and Maraglia has filed various informal letters. The Court shall discuss how it proposes to deal with these filings, *infra.*

*Persons Act*, § 7, 42 U.S.C. § 1997e. The PLRA provides that

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Title 42 U.S.C. § 1997e(a).

■ The PLRA's exhaustion requirement "simply 'governs the timing of the action' and does not contain the type of 'sweeping and direct language that would indicate a jurisdictional bar rather than a mere codification [ ] of administrative exhaustion requirements'." *Ali v. District of Columbia*, 278 F.3d 1, 6 (D.C.Cir., 2002) citing *Chelette v. Harris*, 229 F.3d 684, 688 (8 Cir., 2000) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)).

■ While exhaustion under the PLRA is not jurisdictional, it is mandatory for inmates to satisfy this requirement before bringing an action in a court of law. *Porter v. Nussle*, 534 U.S. 516, 520, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The PLRA was amended to include such a mandate in order to deter frivolous lawsuits brought by prisoners and to conserve judicial resources. *Porter*, 534 U.S. at 527, 122 S.Ct. 983.

In *Brown v. Toombs*, the Sixth Circuit had occasion to comment on a plaintiff's burden to attach such evidence of grievances:

Prisoners filing § 1983 cases involving prison conditions must allege and show that they have exhausted all available state administrative remedies. A prisoner should attach to his § 1983 complaint the administrative decision, if it is available, showing the administrative disposition of his complaint.

*Brown v. Toombs*, 139 F.3d 1102, 1104 (6 Cir.), *cert. denied*, 525 U.S. 833, 119 S.Ct. 88, 142 L.Ed.2d 69 (1998).

The Massachusetts Department of Corrections provides a grievance system for prisoners under 103 C.M.R. 491.00 which details the procedure an inmate must follow to file a formal complaint and seek redress within the prison. Among other rules, the regulation regarding appeals states that "an inmate whose grievance has been denied may appeal to the Superintendent." 103 C.M.R. 491.12(1). The plaintiff does not allege that he has filed grievances or appeals in his original or amended complaints. In the absence of any such allegations, or allegations regarding foul play by prison administration to deter efforts to file grievances, the Court must conclude that the exhaustion requirement was not met.

In light of the plaintiff's *pro se* status and specific circumstances, the Court must determine whether the exhaustion requirement is reasonable in this case and whether Maraglia fails completely to satisfy the requirement. In *Wyatt v. Leonard*, 193 F.3d 876 (6 Cir., 1999), the Court adopted a liberal reading of the PLRA in ruling that an inmate who was raped by another prisoner and then filed a § 1983 claim against prison employees satisfied the exhaustion requirement through good faith attempts. *Wyatt*, 193 F.3d at 878. In *Wyatt*, the plaintiff submitted various correspondence to prison officials regarding the charges he intended to bring against them. *Wyatt*, 193 F.3d at 878. While the Court determined that the prisoner "did not follow precisely the requisite procedures for bringing his complaint to the attention of the appropriate person, he [had] substantially complied with the exhaustion requirement by giving written notice on several occasions to prison officials." *Wyatt*, 193 F.3d at 880.

While Maraglia does not allege that he has filed grievances, he does claim to have complained to prison guards and supervisors and refers to discussions concerning past grievances filed. Under *Wyatt* the Court might have been persuaded that these good faith attempts also satisfy the exhaustion requirement if not for a pertinent distinguishing feature between *Wyatt* and this case, to wit, § 1997(e)a of the PLRA was not yet law when the facts of *Wyatt* occurred, but it had been in effect for several years at the time the events at hand occurred. *Wyatt*, 193 F.3d at 879. The Court in *Wyatt* limited its holding to the few cases in which acts occurred and complaints were filed before the PLRA was amended, but did not seem willing to extend its generous reading of the PLRA exhaustion requirement to complaints filed after 1997(e)a took effect. *Wyatt*, 193 F.3d at 879. Consequently Maraglia must be held to the higher standard of the PLRA, and so is found to have failed to exhaust his available remedies.

■ Even if the monetary damages that plaintiff seeks are not available through the prison grievance process, the Supreme Court has determined that the PLRA exhaustion requirement still applies in order to allow prison officials an opportunity to address inmates' concerns before legal action is taken. *Booth v. Churner*, 532 U.S. 731, 740, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Adhering to the regular PLRA procedures ensures that inmates are not simply able to claim money damages in order to bypass the exhaustion requirement. The Court commented on the current mandate of exhaustion:

> Before § 1997e(a) was amended by the Act of 1995, a court had discretion (though no obligation) to require a state inmate to exhaust "such... remedies as are available," but only if those reme-

dies were "plain, speedy, and effective." 42 U.S.C. § 1997e(a). That scheme, however, is now a thing of the past, for the amendments eliminated both the discretion to dispense with administrative exhaustion and the condition that the remedy be "plain, speedy, and effective" before exhaustion could be required.

*Booth,* 532 U.S. at 739, 121 S.Ct. 1819.

Therefore, Maraglia must met the PLRA standards despite the fact that he is seeking money damages.

Finally, it was somewhat unclear whether inmates' claims of excessive force involved "prison conditions" under the PLRA because a definition of the phrase "prison conditions" was not included in § 1997e. The Supreme Court has clarified this point, ruling in *Porter* that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532, 122 S.Ct. 983. Clearly, then, the PLRA is applicable to the case at bar even though the claims involve excessive force.

■ In light of the PLRA's strict requirements for exhaustion of administrative remedies, Maraglia must allege that he has satisfied those requirements. However, on a motion to dismiss, the Court cannot consider the extrinsic evidence of grievances filed which has been submitted by both the plaintiff and the defendants. Accordingly, the Court shall deny the motion to dismiss to the extent that dismissal is sought and convert the motion to a motion for summary judgment on the issue of whether the plaintiff has exhausted his administrative remedies as to the claims

(both federal and state[5]) against the five defendants who remain in the case. *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7 Cir., 2000); *Arnold v. Goetz*, 245 F.Supp.2d 527, 540 (S.D.N.Y., 2003) citing *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2 Cir., 1999); *Torrence v. Pesanti*, 239 F.Supp.2d 230, 233–4 (D.Conn.2003).

## VI. Conclusion and Second Order

For the reasons stated, it is ORDERED that the Motion to Dismiss (#33) as to claims against defendants Peckham, Slyman, Andrea, Hennessy and Hammond be, and the same hereby is, DENIED as drafted. It is FURTHER ORDERED that pursuant to Rule 12(b), Fed.R.Civ.P., said motion by defendants Peckham, Slyman, Andrea, Hennessy and Hammond be, and the same hereby is, CONVERTED to a motion for summary judgment on the question of whether the plaintiff has exhausted his administrative remedies with respect to the claims brought against these defendants. The Court shall consider the materials submitted by the defendants, i.e., the Affidavit of Ruth Anthony (#34) and the Affidavit of Maria Sazonick (#35). If the defendants wish to provide any other materials on the issue of exhaustion, they shall file and serve the materials *on or before the close of business on Friday, April 8, 2005.* The materials must comply with the provisions of Rule 56(e), Fed. R.Civ.P.

The plaintiff may submit any materials he wishes to support his contention that he has exhausted his administrative remedies as to each of the claims he brings against each of the five remaining defendants. However, the materials must be authenticated under oath and all factual averments must be made under oath in affidavit form. *See* Rule 56(e), Fed.R.Civ.P. If the plaintiff claims he did not exhaust any of his available remedies because of deliberate wrongful actions of the defendants to deter him from exhausting his remedies (i.e., filing grievances and appeals), he shall submit an affidavit providing the factual details of such deliberate wrongful actions. Plaintiff's authenticated materials and/or affidavit must be filed *on or before the close of business on Friday, April 29, 2005.*

---

**5.** However, bearing in mind the plaintiff's *pro se* status, a brief review may prove helpful. The state claims under the Massachusetts Declaration of Rights and the State Civil Rights Act as well as the claims of assault and battery and intentional infliction of emotional distress are subject to dismissal under state law. Massachusetts General Laws Chapter

127 § 38F provides that "an inmate shall not file any claim that may be the subject of a grievance under Section 38E unless the inmate has exhausted the administrative remedy established pursuant to said Section 38E..." Thus, all administrative remedies must be exhausted before the plaintiff may pursue these claims in the federal court.