**NATIONAL COUNCIL OF YOUNG ISRAEL, Plaintiff,**

v.

**David WOLF, et al., Defendants.**

**No. 96 Civ. 8903 (LAK).**

United States District Court, S.D. New York.

May 5, 1997.

Maurice Heller, Joel C. Haims, Heller, Horowitz & Feit, P.C., New York City, for Plaintiff.

Alfred W. Charles, Langer & Charles, New York City, for Defendant David Wolf.

Theodore T. Mairanz, Neiman Ginsburg & Mairanz, P.C., New York City, for Defendants Marvin Neiman and Howard Wolf.

James F. Donohue, White Plains, NY, for Defendants Bruno J. Gioffre and Anthony B. Gioffre, Jr., as Executors of the Estate of Anthony B. Gioffre, and Bruno J. Geoffre.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This civil RICO action is brought by the owner of a Mt. Vernon, New York, nursing home against its former owner, the former owner's son, and others. A major element of the dispute between the parties concerns the computation of the outstanding balance due on a wraparound mortgage. The only basis for proceeding in federal rather than state court is the presence of the RICO claims.

Defendants move to dismiss the complaint and for other relief. Plaintiff cross-moves to amend in a limited respect.

### Facts

The allegations of the complaint, which are deemed true for purposes of the motions to dismiss the complaint, tell the following story:

David Wolf in 1977 was the owner, and his son Howard Wolf the administrator, of Shalom Nursing Home ("Shalom"), a skilled nursing care facility. David Wolf was caught up in the nursing home scandals of that era, convicted of a felony, and forced by an agreement with the New York State Special Prosecutor for Nursing Homes to divest his interest in Shalom. Accordingly, Wolf first leased and then, in January 1983, sold Shalom to the plaintiff. Howard Wolf, who was not implicated in wrongdoing, stayed on with plaintiff as Shalom's administrator.

At the time of the sale, Shalom was subject to a $4.8 million first mortgage in favor of Bank of New York ("BNY"). The sale price was $5 million, which was paid by plaintiff giving Wolf a wraparound mortgage which in substance consisted of the preexisting BNY first mortgage and a purchase money second mortgage in favor of Wolf in the approximate amount of $200,000. Simultaneously with the execution of the wraparound mortgage, Wolf assigned to BNY the entire monthly payments due under the mortgage, and BNY agreed to apply them first to satisfy the principal and interest due on the first mortgage and then to Wolf. The wraparound mortgage was to become due on December 25, 1995 and the BNY first mortgage seven days later.

According to the complaint, the sale of Shalom to plaintiff was intended from the outset by the Wolfs as a ruse to defraud plaintiff. David Wolf allegedly owned a vacant parcel of land adjacent to Shalom. The parcel was landlocked and, allegedly, of value only if used under common ownership with Shalom. Accordingly, the Wolfs are said to have planned from the very beginning to recapture Shalom from plaintiff in order to build a second nursing home on the adjacent lot and to operate the two facilities together.

The means by which the Wolfs allegedly sought, and continue to seek, to accomplish

their goal was to precipitate a default on the mortgage, thus permitting them to reacquire the property. The complaint asserts that Howard Wolf used his position as Shalom's administrator to cause Shalom to make its mortgage payments "late virtually every month since 1983." (Cpt ¶ 25) Moreover, defendants are alleged to have raided plaintiff's treasury in order to cause it to default on the mortgage. They are said to have caused the appointment of an "advisory board" for Shalom consisting of defendants Bruno Gioffre and Marvin Neiman as well as the late Anthony Gioffre. These individuals were lawyers or accountants who performed services for the Wolfs but whom the Wolfs caused to be paid by Shalom, thus draining Shalom's finds to the extent of about $1 million. David Wolf, moreover, is alleged to have obtained some $75,000 from Shalom in the first half of 1996 for no legitimate purpose by conspiring with his son Howard and by threatening other members of the Shalom bookkeeping staff by telephone.

In September 1993, the defendants allegedly applied to the New York State Public Health Council ("PHC") for approval to build a new nursing facility on the adjacent lot. The application was approved in July 1996.[1]

In late summer 1995, BNY notified plaintiff that it would not renew its mortgage and threatened to foreclose if the mortgage was not paid in full at its December 1995 maturity date. It assigned as reasons Shalom's late payments, checks bounced on its accounts, and David Wolf's intended refusal to extend the wraparound mortgage. It is in this context that the dispute concerning the principal balance of the mortgage arose.

On December 13, 1995, David Wolf notified plaintiff that the principal balance on the mortgage was $4.5 million rather than the $3.4 million that plaintiff claims is owed. The difference is said to lie in Wolf's allegedly fraudulent application of part of Shalom's monthly mortgage payments to late fees, thus lessening the extent to which Shalom's monthly payments reduced the principal amount of the mortgage and increasing the portion of the monthly payments applied to

the mortgage that went to satisfy interest as opposed to principal. The late fees, according to plaintiff, are entirely baseless and have been claimed by Wolf for the purpose of making the refinancing of plaintiff's debt even more difficult in an effort to force a default.

### The Complaint

The complaint contains ten causes of action, four under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and the others under state law. It alleges the existence of two RICO enterprises: (1) an association in fact of the Wolfs, the Gioffres, Neiman, Summit Health Center, Inc. (the proposed operator of the Wolfs' new nursing home), and other unnamed individuals and entities, and (2) Shalom.

The first claim for relief asserts that the defendants acquired an interest in the enterprise—which enterprise is not specified—through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(b). The second asserts that the defendants participated in the conduct of the affairs of the enterprise—again, which of those alleged is not specified—through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). The third contends that the Wolfs and Neiman used or invested proceeds derived from the alleged pattern of racketeering activity to acquire an interest in, or to establish and operate, "the Enterprise" in violation of 18 U.S.C. § 1962(a). The fourth claim is a RICO conspiracy claim under 18 U.S.C. § 1962(d).

### Discussion

#### The RICO Claims

■ The first cause of action rests on Section 1962(b) and asserts that the defendants acquired an interest in an enterprise through a pattern of racketeering activity. Although the enterprise is unspecified, only two are

---

1. Plaintiff alleges that the approval was obtained by fraud in that defendants did not disclose (1) that David Wolf was involved in the project, (2) that the project was contiguous to Shalom, and (3) the alleged racketeering scheme.

alleged in the complaint: the association in fact of the defendants and Summit, and Shalom. There is no suggestion that the defendants acquired an interest in the association in fact enterprise, whether through a pattern of racketeering activity or otherwise. The only right that any of the defendants is alleged to have acquired that even arguably might be characterized as an "interest" in Shalom is the wraparound mortgage. And while the complaint alleges that the acquisition of the mortgage was part of a plan, the ultimate object of which was to regain control of Shalom, there is no contention that the mortgage itself was "acquire[d] or maintain[ed], directly or indirectly" through a pattern of racketeering activity. The first claim for relief therefore fails to state a claim upon which relief may be granted. *See, e.g., Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1062–63 (2d Cir.1996).

■ The third claim for relief is based on 18 U.S.C. § 1962(a) and alleges that the Wolfs and Neiman invested money derived from the alleged pattern of racketeering activity "to acquire an interest in, or to establish or operate the Enterprise." In order to state a claim under Section 1962(a), however, a private plaintiff must allege that it was injured as a proximate consequence of the investment of the funds derived from the alleged racketeering activity. *E.g., Ouaknine v. MacFarlane,* 897 F.2d 75, 82–83 (2d Cir.1990). This complaint does not allege that the defendants invested any illicitly-obtained funds in either of the alleged enterprises—Shalom or the association in fact—much less that plaintiff was injured in consequence of any such investments. In consequence, the third count fails to state a claim upon which relief may be granted.

The second claim alleges that the defendants conducted the affairs of the enterprise through a pattern of racketeering activity as described above. Defendants, for purposes of this motion, do not dispute that the enterprise and pattern requirements of RICO are pleaded adequately. Rather, they argue only that the complaint fails to plead fraud with the particularity required by FED. R. CIV. P. 9(b).

The essence of the fraud claim is twofold—first, that Howard Wolf abused his trust as administrator of Shalom to destroy Shalom's payment history and assist his father in raiding its treasury and, second, that David Wolf claims that the principal balance due on the mortgage is substantially higher than is correct on the basis of his deduction of late fees which he knew to be unauthorized by the mortgage.

■ Certainly the claim regarding Howard Wolf's actions as administrator sufficiently alleges the elements of mail fraud—the existence of a fraudulent scheme to acquire Shalom and the use of the mails in furtherance of that scheme. *E.g., Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954). Howard Wolf owed plaintiff a fiduciary duty as administrator of Shalom. As embezzlement by a fiduciary satisfies the scheme element of the mail fraud statute,[2] so too does wilful misapplication of funds in furtherance of a fiduciary's private interests, which is what is alleged here.[3] The requisite use of the mails need not be by the defendant and need only be reasonably foreseeable. *United States v. Maze,* 414 U.S. 395, 400, 94 S.Ct. 645, 648–49, 38 L.Ed.2d 603 (1974); *United States v. Kenofskey,* 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836 (1917). Indeed, the mailings need not themselves contain false or misleading statements. *Schmuck v. United States,* 489 U.S. 705, 714–15, 109 S.Ct. 1443, 1449–50, 103 L.Ed.2d 734 (1989). Each mailing is separately indictable, so a plethora of racketeering acts is alleged. The only issue is whether the claim is sufficient under Rule 9(b).

Insofar as the complaint relies upon payments by Shalom during Howard Wolf's ten-

---

**2.** *E.g., United States v. Altman,* 48 F.3d 96, 101 (2d Cir.1995).

**3.** Moreover, breach of fiduciary duty accompanied by concealment or deception, which also is alleged here, satisfies the scheme requirement where the concealment or deception could result in harm. *E.g., Altman, supra* n. 2; *United States v. Weiss,* 752 F.2d 777 (2d Cir.), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985).

ure as administrator, it is somewhat short on detail. While it alleges that about $1 million was paid to members of the advisory board for work that in fact was for the account of the Wolfs, not Shalom, it identifies no specific payments and gives no dates. The allegations of late mortgage payments similarly are vague. No dates are given, and the extent of the delays is not mentioned—a curious omission in light of the allegation elsewhere that BNY never imposed a late fee. Indeed, the complaint does not even allege that Shalom had sufficient finds to make any late payments on a timely basis. Moreover, while the complaint is ambiguous in this respect, it appears that the assertion that the payments to the advisory board members were not for work done for Shalom is made on information and belief without any supporting facts justifying the allegation. (Cpt ¶¶ 21–22).

■ Rule 9(b) requires that the circumstances of the fraud be alleged with particularity. This requires reasonable detail as well as the allegation of facts from which a strong inference of fraud reasonably may be drawn. *E.g., Chill v. General Electric Co.,* 101 F.3d 263, 267 (2d Cir.1996); *San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos.,* 75 F.3d 801, 812 (2d Cir.1996); *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994). Moreover, allegations made on information and belief are insufficient "unless the facts are peculiarly within the knowledge of the defendants, in which case the complaint must allege facts demonstrating the basis for the information and belief." *Spira v. Nick,* 876 F.Supp. 553, 557 (S.D.N.Y.1995) (citing *Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972)).

The allegations regarding the alleged late payments and the payments to the advisory board members do not meet this standard. As Howard Wolf was discharged as administrator of Shalom some time ago, the books and records appear to be in the control of the plaintiff, not the defendants. There is no

reason to suppose that plaintiff is unable to provide substantially all of the relevant details of the actions alleged—the dates and amounts of each advisory board and mortgage payment, Shalom's financial condition when the allegedly late mortgage payments were made, and so on. While it may not have all of the facts underlying the assertion that the advisory board members did nothing to earn the payments made to them, it is obliged to do more than make the bald assertion that this was the case. Accordingly, so much of the Section 1962(c) claim as rests on Howard Wolf's actions while administrator of Shalom fails to allege fraud with the particularity required by Rule 9(b).

■ The claim with respect to David Wolf's alleged deduction of late fees stands somewhat differently. The complaint alleges that Wolf, with the assistance of Neiman and his son, asserted in December 1995 that the mortgage balance was $1.1 million higher than it actually was on the basis of his application, without plaintiff's knowledge, of monthly payments to unauthorized late fees which he knew he had no right to charge. There is no lack of detail. Although defendants are correct in referring to the reluctance of courts to countenance the conversion of claims of breach of contract into fraud claims, the allegations with respect to this incident are quite sufficient.

The question then is the proper disposition of the motion, given that one of the fraud allegations is sufficient and others are not. In another sort of case, the motion to dismiss would be granted as to the insufficient allegations and denied as to the other, and the case simply would proceed. In this RICO case, however, the matter is not so simple. RICO requires that the plaintiff plead and prove a pattern of racketeering activity. While defendants on these motions did not challenge the sufficiency of the pattern allegations, they probably did not do so because the allegations regarding Howard Wolf's actions over a period of years, coupled with David Wolf's December 1995 action, appeared sufficient in this respect. Absent the Howard Wolf allegations, however, defendants well might be disposed to raise the pattern issue with regard to David Wolf. It

therefore appears that the appropriate course of action is to dismiss the complaint in its entirety with leave to amend, thus affording plaintiff a further opportunity to plead its best case and defendants a further opportunity to challenge the result.[4]

*The Motion to Strike*

Defendants David Wolf and Neiman move also to strike allegedly scandalous portions of the complaint pursuant to FED. R. CIV. P. 12(f)—specifically, the description of Wolf as a convicted felon and a reference to charges of embezzlement and a contempt adjudication against Neiman. The motions of course are mooted, as a technical matter, by the dismissal of the complaint. Nevertheless, it is appropriate to provide some guidance with respect to the framing of the amended complaint.

Rule 12(f) motions have been described aptly as disfavored and "time wasters." 5A CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1382 (1990). Inasmuch as the Court does not submit pleadings to the jury in civil cases, it is difficult to see how a defendant is prejudiced by the presence in the complaint of material such as that at issue here. It is equally difficult to see how the plaintiff is benefitted unless, of course, the plaintiff seeks to use copies of the complaint as a vehicle for defaming the defendant to audiences outside the courthouse, a course of conduct that carries its own risks. In all the circumstances, plaintiff might be well advised to omit the material at issue in any amended complaint.

*The Neiman Release and the Cross–Motion to Amend*

In January 1995, in the settlement of another matter, the plaintiff executed a general release in favor of defendant Marvin Neiman. Neiman here seeks summary judgment dismissing the complaint against him on the basis of that release. Plaintiff cross-moves to amend to add a cause of action to set aside the release.

To begin with, it is clear that plaintiff seeks recovery against Neiman for events subsequent to January 1995. In consequence, the release would not be a complete defense to this action even if it were of unquestioned validity.

Nor is the release of unquestioned validity. Plaintiff claims that Neiman was acting as an attorney for plaintiff at the time the release was executed. If that is so, Neiman bears the burden of proving affirmatively that the release was "in every respect free from fraud on the attorney's [i.e., Neiman's] part." *Mergler v. Crystal Properties Assocs.*, 179 A.D.2d 177, 181, 583 N.Y.S.2d 229, 232 (1st Dept.1992). There manifestly are genuine issues of fact as to whether Neiman was plaintiff's attorney at the time plaintiff executed the release and, if so, whether he made the disclosures necessary to sustain his burden.

Accordingly, Neiman's motion for summary judgment will be denied. Plaintiff may include the claim for cancellation of the release in any amended complaint.

*Conclusion*

Defendants' motions to dismiss the amended complaint for failure to plead the RICO claims with the particularity required by Rule 9(b) are granted with leave to serve and file an amended complaint within 21 days of the date of this order. The state law claims are dismissed for lack of jurisdiction without prejudice to their reassertion in any amended complaint. Defendant Neiman's motion for summary judgment dismissing the complaint is denied. The motion of certain defendants to strike portions of the complaint pursuant to Rule 12(f) and plaintiff's cross-motion for leave to amend both are denied as moot.

In deciding whether to file an amended complaint, plaintiff would do well to consider the likelihood that doing so appears quite likely to result in another round of motion

---

**4.** The Court defers any discussion of the issues raised with respect to the state law causes of action. If plaintiff proves unable to state a legally sufficient federal claim, there would be no basis for exercising jurisdiction over the state law

claims. Nor is there any reason to discuss the RiCO conspiracy claim, which cannot stand given the insufficiency of the other RICO counts. *Discon, Inc., supra.*

practice in which defendants' object presumably would be to obtain dismissal of the RICO claims for insufficiency, which almost surely would require dismissal of the state law causes of action for lack of subject matter jurisdiction. Plaintiff could spare itself at least some and perhaps all of this additional burden by proceeding in the state courts, which would have unquestioned jurisdiction over *both* the state law and RICO claims. *Tafflin v. Levitt*, 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990).

SO ORDERED.