**McCRAE ASSOCIATES, LLC, Plaintiff,**

v.

**UNIVERSAL CAPITAL MANAGEMENT, INC., Michael Queen, William Colucci, Joseph Drennan, Thomas Pickard, Jeffrey Muchow, and Steven Pruitt, Defendants/Third–Party Plaintiffs,**

v.

**Stephen Funk, Third–Party Defendant.**

**Civil No. 3:06CV1100(AWT).**

United States District Court, D. Connecticut.

May 13, 2008.

John J. Murphy, III, Stradley, Ronon, Stevens & Young, Philadelphia, PA, for Defendants.

John Charles King, Updike, Kelly & Spellacy, P.C., Hartford, CT, for Defendants/Third–Party Plaintiff.

David Beebe Collier, Anne C. Dranginis, Austin J. McGuigan, Rome McGuigan-State HTFD, Hartford, CT, for Plaintiff/Third–Party Plaintiffs/Third–Party Defendant.

Shannon Clark Kief, Rome McGuigan-State HTFD, Hartford, CT, for Plaintiff/Third–Party Plaintiffs.

## RULING ON MOTION TO DISMISS TO FRAUD COUNTS AND MOTION TO STRIKE CERTAIN PARAGRAPHS FROM DEFENDANTS' THIRD–PARTY COMPLAINT AND AMENDED COUNTERCLAIM

ALVIN W. THOMPSON, District Judge.

Pursuant to Fed.R.Civ.P. 12(b)(6), plaintiff McCrae Associates, LLC ("McCrae") and third-party defendant Stephen ("Funk") have moved to dismiss the fraud counts of the Third–Party Complaint and the Amended Counterclaim filed by defendants and third-party plaintiffs Universal Capital Management, Inc. ("UCM"), Michael Queen ("Queen"), William Colucci ("Colucci"), Joseph Drennan ("Drennan"), Thomas Pickard ("Pickard"), Jeffrey Muchow ("Muchow"), and Steven Pruitt (collectively, the "Defendants"), for failure to plead fraud with particularity as required by Fed.R.Civ.P. 9(b). Pursuant to Fed. R.Civ.P. 12(f), McCrae and Funk have moved to strike paragraphs 30 and 31 of the Amended Third–Party Complaint (the "Complaint") and paragraphs 29 and 30 of the Amended Counterclaim (the "Counterclaim") as immaterial, impertinent, and scandalous. For the reasons set forth below, the plaintiff's and the third-party defendant's motion is being denied.

## I. FACTUAL ALLEGATIONS

For purposes of this motion, the court takes the following factual allegations set forth in the Complaint and the Counterclaim as true.

During the summer of 2004, Queen, Funk, Colucci, and Drennan began talks to establish UCM, a publicly-held venture

capital company. Initially, they contemplated that they would all serve as full-time officers of UCM and devote their best efforts to the success of the organization. In exchange for Funk's commitment and his promise to contribute 150,000 shares of PSI–Tec ("PSI") stock he owned to UCM, Funk was entitled to receive 500,000 shares of UCM stock. Funk requested that UCM issue 300,000 of these shares to McCrae, a company controlled by him and his wife, and 200,000 of these shares to Liberator LLC ("Liberator"), a company controlled by his brother.

On July 1, 2004, UCM executed Subscription Agreements (the "Agreements"), which provided for the issuance of 300,000 shares to McCrae in exchange for a $300 payment and 200,000 shares to Liberator in exchange for a $200 payment.[1] The Agreements, however, did not set forth additional promises made by Funk to identify potential acquisition targets for UCM, secure funding from outside investors for UCM, identify target acquisition companies, and provide publicly registered corporate shells to facilitate reverse mergers.

Subsequently, Funk informed Queen that he would not serve as an officer, employee, or director of UCM, but he agreed to sit on UCM's Board of Advisors and agreed that he would perform the services for UCM that he had promised to perform. However, following receipt by McCrae and Liberator of the 500,000 shares of UCM stock, Funk failed to make any reasonable effort to perform his obligations. Funk failed to identify a single investment opportunity for UCM in three years and has not made a meaningful effort to raise investor funds to assist UCM in its acquisition activities. Rather, Funk

secretly diverted business opportunities that should have been directed to UCM to other companies, and, in exchange for his promises to help those other companies with their merger activities, received shares of stock in those other, thinly capitalized companies. UCM would not have issued the 500,000 shares of UCM stock to McCrae and Liberator if Funk had not made his promises and representations about the services he would provide to UCM.

In addition, Funk has engaged in a pattern of "dumping", or selling, large quantities of the stock of those thinly capitalized companies to which he diverted business opportunities that should have been directed to UCM. This practice on the part of Funk has depressed the stock value of these companies to the detriment of their remaining shareholders.

## II. LEGAL STANDARD

### A. Fed.R.Civ.P. 12(b)(6)

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the

---

1. The Complaint discusses the Subscription Agreements with both McCrae and Liberator, but the Counterclaim discusses only the Subscription Agreement with McCrae. In this

ruling, the court references the allegations contained in the Complaint because it is more inclusive.

speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). The plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Mytych v. May Dept. Stores Co.*, 34 F.Supp.2d 130, 131 (D.Conn.1999), quoting *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer*, 416 U.S. at 232, 94 S.Ct. 1683). In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993).

Under Fed.R.Civ.P. 9(b), a complaint alleging fraud "must state with particularity the circumstances constituting fraud or mistake." This heightened pleading standard "serves to provide a defendant with fair notice of a plaintiff's claim, safeguard his reputation from improvident charges of wrongdoing, and protect him against strike suits." *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir.2007). In order to comply with Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993). However, "dates, times and places need not be pleaded with absolute precision, so long as the allegations sufficiently put the defendant on notice as to the circumstances of the charged misrepresentations." *Harris v. Wells*, 757 F.Supp. 171, 174 (D.Conn.1991). *See International Motor Sports Group, Inc. v. Gordon*, 1999 WL 619633 (S.D.N.Y.1999) (concluding that "Rule 9(b) requires only that a complaint provide adequate information to allow the defendants to frame a response" and that it "does not require that a complaint plead fraud with the detail of a desk calendar or a street map.") (internal citations and quotation marks omitted); *In re Matterhorn Group, Inc.*, 2000 WL 1174215, *4 (Bankr.S.D.N.Y. 2000) ("The adequacy of the information [plead in a complaint] will depend, *inter alia*, on the length of the time over which the misrepresentations were supposedly made and the number of persons who supposedly made them.") (citing *International Motor*); *Kalin v. Xanboo, Inc.*, 526 F.Supp.2d 392, 401 (S.D.N.Y.2007) (concluding that the plaintiff sufficiently specified the date of the fraudulent statements when they were allegedly made "[i]n or around September 1999" and the location of the statements when it could be inferred that they were made in the offices of one of the defendants).

Under Rule 9(b), "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." However, the complaint must allege enough facts that "give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.1995). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to com-

mit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994).

### B. Fed.R.Civ.P. 12(f)

Fed.R.Civ.P. 12(f) permits a court to "strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." In deciding whether to strike a portion of a pleading on a Rule 12(f) motion, "it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible.... Thus the courts should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir.1976). Motions to strike "are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." *Schramm v. Krischell,* 84 F.R.D. 294, 299 (D.Conn.1979).

### III. DISCUSSION

### A. Motion to Dismiss the Fraud Counts

McCrae and Funk argue that the common law fraud claims in the Counterclaim and in the Complaint should be dismissed for failure to state with particularity the circumstances constituting the alleged fraud.[2] The court analyzes this argument under the four-prong test articulated by the Second Circuit in *Mills,* and for the reasons set forth below, the court concludes that the defendants have stated with sufficient particularity the circumstances constituting the alleged fraud.

### 1. The Allegedly Fraudulent Statements

■ McCrae and Funk argue that the Counterclaim and the Complaint fail to specify the allegedly fraudulent statements. The defendants allege that Funk, Queen, Colucci, and Drennan "contemplated" that they would serve as full-time officers of UCM and devote their "best efforts" to the success of the organization. (Doc. No. 88, Compl. at ¶ 14; Doc. No. 87, Countercl. at ¶ 13). The only other references to specific promises made by Funk appear in paragraph 19 of the Complaint, which states that the "Agreements do not set forth the entire agreement between the parties," including Funk's promise to perform certain services for UCM, and in paragraph 21 of the Complaint, which states that "[l]ater, Funk informed Queen that he would not serve as an officer, employee or director of UCM, but that he would still perform" certain specified services for UCM. (Compl. at ¶ 19, 21; Countercl. at ¶¶ 18, 20).

McCrae and Funk argue that the statement contained in paragraph 14 is too vague to satisfy the requirement of specificity, and that the statements contained in paragraphs 19 and 21 are alleged to have occurred after UCM issued the shares at Funk's direction, and thus could not have induced UCM to issue those shares. Although the statement contained in paragraph 14, standing alone, does not satisfy the requirement of specificity, that statement in conjunction with the statements contained in paragraphs 19 and 21 is sufficiently specific. The Complaint and the

---

**2.** Under Connecticut law, the essential elements of an action in common law fraud are "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." *Weisman v. Kaspar,* 233 Conn. 531, 539, 661 A.2d 530 (1995).

Counterclaim specifically allege that Funk promised "to identify potential acquisition targets for UCM, secure funding from outside investors for UCM, identify target acquisition companies and provide publicly registered corporate shells to facilitate future reverse mergers." (*Id.*). Although McCrae and Funk argue that these promises were not made until after the shares were issued, based on the fact that the promises are mentioned after the Agreements in the Complaint and the Counterclaim, a fair reading of these allegations is that the promises were made prior to issuance of the shares and were reaffirmed after the Agreements were executed. Paragraph 19 states that "the Agreements do not set forth the entire agreement between the parties," including the specific promises made by Funk, and the most reasonable inference is that the promises were made prior to the issuance of the shares at the direction of Funk. Paragraph 21 states that "later, Funk informed Queen that he would not serve as an officer, employee or director of UCM, but that he would *still* perform" (emphasis added) the services for UCM, and the most reasonable inference is that Funk reaffirmed his promises after the Agreements were executed. Thus, the Counterclaim and the Complaint do identify with specificity the statements that UCM contends were fraudulent.

### 2. Identity of the Speaker

■ McCrae and Funk also argue that the "contemplation" of Funk, Queen, Colucci, and Drennan "that they would all serve as full-time officers of UCM and devote their best efforts to the success of the organization," does not provide enough detail about the identity of the speaker. (*See* Compl. at ¶ 14; Countercl. at ¶ 13). However, the allegedly fraudulent promises and representations referred to in paragraphs 19 and 21 are clearly attrib-

uted to Funk and no one else. Therefore, the defendants have sufficiently identified Funk as the individual who made the allegedly fraudulent statements.

### 3. The Time and Location of the Statements

■ McCrae and Funk argue that the Complaint and the Counterclaim fail to provide any details about when or where Funk's statements were made. Although the allegations do not provide a specific date when the statements were made, they do contain details about when the statements were made. They indicate that the initial meeting between Queen, Funk, Colucci, and Drennan took place in the summer of 2004. They also reflect that the Agreements were executed on July 1, 2004, but that the Agreements did not set forth the entire agreement between the parties, including Funk's promises. Thus, the promises and representations made by Funk are alleged to have been made in close proximity to July 1, 2004. Although the Complaint and the Counterclaim do not specify the location where Funk's statements were made or the manner by which they were transmitted (i.e. whether the statements were made orally or in writing), the pleadings provide sufficient detail about the nature and circumstances of the statements to provide McCrae and Funk with fair notice of the defendants' claims regarding the allegedly fraudulent statements in the context of this case. This is a situation where a fraud claim is being asserted against one individual in connection with one transaction, not a situation where, for example, the alleged statement was made by a company on behalf of whom any number of persons could have spoken at various times.

### 4. Explanation of Why the Statements Were Fraudulent

■ The Complaint and the Counterclaim provide a sufficient explanation of

why the statements allegedly made by Funk were fraudulent. First, the defendants allege that Funk's promises to perform certain services for UCM, which induced UCM to issue the 500,000 shares of common stock at Funk's direction, were never performed. They allege that Funk failed to make any reasonable effort to identify investment opportunities for UCM, raise investor funds, or assist in UCM's acquisition activities. They also allege that, since 2004, Funk has raised no more than approximately 3% of the total funds UCM has procured from outside investors to support its acquisition activities. In addition, they allege that, instead of performing the services he promised to perform, Funk has secretly diverted business opportunities for his own benefit. Thus, the Complaint and the Counterclaim provide a sufficient explanation of why Funk's statements were fraudulent.

### B. Fraudulent Intent

 McCrae and Funk argue that the defendants have failed to allege facts sufficient to give rise to a strong inference of fraudulent intent. As an initial matter, the court notes that intent may be alleged generally under Fed.R.Civ.P. 9(b). Here, the defendants have alleged facts that constitute strong circumstantial evidence of conscious misbehavior sufficient to raise a strong inference of fraudulent intent. The defendants allege that Funk has engaged in a related pattern of self-dealing that also involves three other companies, which involves similar promises by Funk to provide services in exchange for shares of common stock in those companies. Specifically, the defendants allege that Tag Entertainment and BioAccelerate provided shares of their common stock to Funk or his designees in exchange for his promise to assist with their merger activities, which he never did. In addition, the defendants allege that IPI Fundraising ("IPI") provid-ed Funk with shares of its common stock in exchange for his promise to raise investor money and facilitate the merger of IPI into an acquisition target, and that Funk failed to raise any money or provide the promised services even though he received the shares. Moreover, the defendants allege that Funk has also been selling large quantities of the shares of the stock of those thinly capitalized companies as part of this course of misconduct on his part. These allegations provide sufficient circumstantial evidence of fraudulent intent to survive a motion to dismiss.

### C. Motion to Strike Paragraphs 30 and 31 of the Complaint and Paragraphs 29 and 30 of the Counterclaim

 McCrae and Funk have moved to strike the following two paragraphs of the Complaint and the Counterclaim:

In addition to engaging in this pattern of fraudulent deceptive conduct, Funk also engaged in a pattern of "dumping" (i.e. selling) large quantities of shares of thinly capitalized companies he has acquired as a result of his misrepresentations.

Selling large quantities of the shares of these thinly capitalized companies only depresses the stock value of the companies to the detriment of its remaining shareholders. This is one more example of Funk's disregard for the interest of the companies he purports to serve and interest of the shareholders.

(Compl. at ¶¶ 30–31; Countercl. at ¶¶ 29–30). McCrae and Funk contend that these paragraphs should be stricken pursuant to Fed R. Civ. P. 12(f) because they contain impertinent, immaterial and scandalous matter. Specifically, they argue that the allegations contained in these paragraphs insert additional factual questions that are

irrelevant to the breach of contract and common law fraud claims brought by the defendants. They also contend that the allegations are designed to prejudice a jury against Funk.

The court agrees with the defendants that these allegations are relevant to UCM's defenses to McCrae's claims and to UCM's contention that Funk acted with fraudulent intent. Whether such evidence will be admissible at trial is an issue to be resolved at a later stage of the litigation. *See Schutz v. Northeast Mortgage Corp.*, 2005 WL 1868888, at *1 (D.Conn.2005). Moreover, because a complaint is not submitted to the jury, the danger of unfair prejudice is minimal. *Id.* ("[t]o the extent that Defendants' aim is to avoid 'unduly inflam[ing] and prejudic[ing] the jury,' their motion is also unnecessary because the Complaint will not be submitted to the jury"); *Nat'l Council of Young Israel v. David Wolf, et al.*, 963 F.Supp. 276, 282 (S.D.N.Y.1997) ("Inasmuch as the Court does not submit pleadings to the jury in civil cases, it is difficult to see how a defendant is prejudiced by the presence in the complaint of material such as that at issue here."). For these reasons, McCrae and Funk have failed to satisfy the heavy burden that must be satisfied in order for the court to grant a motion to strike based on Fed.R.Civ.P. 12(f). *See Lipsky v. Com. United Corp.*, 551 F.2d 887, 893 (1976) ("Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided" and "ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint—on the grounds that the material could not possibly be relevant—on the sterile field of the pleadings alone.").

## IV. CONCLUSION

For the reasons set forth above, the Motion With Respect to Defendants' Amended Counterclaim and Amended Third Party Complaint to Dismiss Fraud Counts and To Strike Certain Paragraphs (Doc. No. 90) is hereby DENIED.

It is so ordered.